Abigail Russell *v.* George W. Bennett et al.

If on the sale upon a *scire facias* on a recognizance taken in the Orphans' Court in proceedings for the partition of the real estate of an intestate, in which the widow waives the assignment of her dower therein and elects to take in lieu of it the interest during her life on the one-third of the amount for which it was sold at trustee's sale in pursuance of the proceedings in that court, and owing to the great depreciation of it in the meantime it sells for less than the real sum for which the recognizance was so taken, the Superior Court will, on the return of the writ and the paying of the money into that court by the sheriff, order the entire amount of it, minus the costs, to be loaned on approved security with the interest thereon to be paid to the widow during her life and the principal thereof at her death to the administrator of the intestate, or as the court may otherwise direct.

This case came up on the return of the sheriff of the county to a sale on a *scire facias* upon a recognizance in the Orphans' Court entered into by David W. Bennett, purchaser of the lands and tenements of his father, George Bennett, deceased, who died intestate, at the trustee's sale on the confirmation of it in the proceedings for the assignment of dower therein to the widow, and the partition of the residue thereof among the heirs-at-law of said deceased, in the said court, and of the proceeds of the sale of the said lands and tenements on the said *scire facias* in the hands of the said sheriff paid by him into this court for further investment, pursuant to the statute in such case made and provided. The real debt of the recognizance was

four thousand and twenty-five dollars, with interest from the 21st day of September, 1860. In the proceedings in the Orphans' Court, Abigail Russell, late Abigail Bennett, the widow of the said George Bennett, deceased, but who has since married Mr. James Russell, waived the assignment of her dower by metes and bounds in the said lands and tenements, and as the residue thereof would not divide without detriment among the heirs-at-law of the said intestate, and would accordingly be ordered to be sold at a trustee's sale for their use and benefit, she elected to take in lieu of her dower the annual interest on an equivalent share, or the one-third part of the purchase-money for which the whole of the said lands and premises should be sold, free of dower, for the term of her natural life, the same to be secured to her by the purchaser thereof at such trustee's sale by recognizance in said Orphans' Court, as provided by law, and the principal of which in this case amounted to one thousand three hundred and forty-one dollars and sixty-six and two-thirds cents, or the one-third of the said sum of four thousand and twenty-five dollars for which the same were sold after deducting all the costs of the said proceedings in the said court. But on the sale of the said lands and tenements by the sheriff under the *scire facias* on the said recognizance the proceeds amounted only to one thousand two hundred and twenty-five dollars, which was brought into court by him for the purpose before stated, and which amount would be subject to a further reduction for costs in this case to the sum of one thousand one hundred and twenty-five dollars and sixty-three cents.

There was at the same time a petition presented on behalf of George W. Bennett and Hester A. Bennett, two of the children and heirs-at-law of the said intestate, George Bennett, deceased, for the partition and distribution of the fund so paid into court by the sheriff among the several recognizees, including the widow and the heirs-at-law, according to their several and respective shares and interests in it, upon the ground that the election of the widow to take the interest on one-third of the proceeds of the sale of the real estate of the said intestate, her deceased husband, for and during her life, in lieu of the assignment by metes and bounds to her of the one-third part of the said real

estate for the term of her life, as and for her dower therein, was her own free and voluntary act, and as such she was bound by it and was not entitled to relief against any loss which had resulted from the subsequent depreciation and sale of the land which she had thus elected to substitute as the only security for the payment of it pursuant to the tenor of the recognizance ; or, in the next place, that if she was to be considered to be entitled to a portion of the net sum for which the lands had been sold under the *scire facias* on the recognizance, and is now in this court, she was estopped from claiming any more of it than her election as widow would give her, and when she came under that election into this court for her proportion of it, she could only claim her proportionate part of it, namely the one-third of it, or rather the interest on the one-third of it during her life, after it shall have been so invested under the order of this court.

A petition was also presented on behalf of Mrs. Russell, the widow of the said intestate, praying the court to order the whole of the said fund to be loaned and invested under the late statute, on good security to be approved by the court, the interest thereon to be paid to her during her life, and the principal thereof at her death to the parties respectively who might then be lawfully entitled to it, inasmuch as the entire amount of it was considerably less than the original fund secured for her use and benefit as said widow, under and by virtue of the said recognizance in lieu of the actual assignment of her dower by metes and bounds in said lands and tenements of the said intestate, and as her just and lawful equivalent or substitution for it.

The petitioners were represented by their respective counsel in the case, but as both the facts and their arguments in it sufficiently appear in the opinion of the court, no report of them is here given.

*Houston, J.,* delivered the opinion of a majority of the court : In this case the lands bound by the recognizance and sold under the *scire facias* issued upon it for less than the one-third of the principal of it, the amount of the sale being one thousand two hundred and twenty-five dollars after deducting the costs to which it is legally subject in this court, and should be invested we think,

for the benefit of Abigail Russell, late Abigail Bennett, the widow of the said George Bennett, deceased.  In the proceedings in the Orphans' Court for the partition of his real estate, she, as his widow, having waived the assignment of her dower by metes and bounds, united with the heirs-at-law in the application for the sale of it, and in lieu of her dower by assignment out of his lands elected to take in money the annual interest on one-third of the proceeds of the sale after deducting costs for and during the term of her natural life, the payment thereof to be secured to her by the purchaser by his recognizance on the lands to be taken and approved in that court as provided for by the statute.    It appears by the record of the proceedings in that court that the sale of the lands was ordered and made, that David W. Bennett became the purchaser of them, and as such entered into recognizance in the real debt of four thousand and twenty-five dollars, that being the net amount of the sale after deducting the costs, to pay her as the widow of the intestate, George Bennett, deceased, the annual interest for the term of her life on the one-third of it, amounting to one thousand three hundred and forty-one dollars and thirty-six cents, and the principal of that sum at her death to the administrator of the intestate or as that court should otherwise order and direct, and also to pay the other two-thirds of the said sum of four thousand and twenty-five dollars to the parties respectively entitled thereto, or, in other words, to the heirs-at-law of the said intestate, with interest thereon in one year from the date of the recognizance. And this is what is termed in the language of the statute the election of the widow "to take, in lieu of her dower by assignment by metes and bounds in the lands and tenements, an equivalent share of the proceeds of the sale of the whole of the intestate real estate," and the recognizance is made a specific lien on the whole of it, as much for her benefit and security as that of any other party entitled under it.    The inflation of prices at the time the land was sold under the order of the court was not alone the cause of the depreciation in the price for which it recently sold under the *scire facias* on the recognizance, but the wood and timber on it which the recognizor had in the meantime cut and disposed of had contributed in no small degree to it.

Under and by virtue of the recognizance and the law under which it was taken, and which must still govern the fund arising from the execution and sale under it, no party under the recognizance can be entitled to any portion of the one thousand three hundred and forty-one dollars and thirty-six cents, the one-third of the net amount for which it was taken, nor can have any claim to be paid any part of it during the lifetime of the widow or until after her death, for whose sole and exclusive benefit it was thus invested to secure her the interest on it during her lifetime in lieu of dower by metes and bounds and the rents and profits of it by assignment of dower to her in the one-third part of the land; but on her death the parties in reversion will be entitled to have the principal of it paid to them in their just and respective proportions pursuant to law and the tenor of the recognizance, and they will ultimately be the then surviving children and heirs-at-law of the intestate, George Bennett, deceased, or their legal representatives. And therefore it would not only be in strict accordance with the provisions and requirements of the statute on the subject, but it would be better for the parties thus entitled, that the net amount of the fund for which the land sold on the recognizance, to wit, one thousand two hundred and twenty-five dollars after deducting the legal costs to which it is subject in this suit, should be invested for her benefit for the term of her life, and after her death to be distributed and paid to the parties so entitled to it in reversion, since that is all they are entitled to according to law, so far as this fund is concerned; and inasmuch as it is less than the amount of her equivalent share of the proceeds of the original sale of the land, one thousand three hundred and forty-one dollars and thirty-six cents, so invested under the recognizance, she, of course, loses by the depreciation in the recent sale of the land, as well as the parties entitled over to the principal of this impaired and reduced fund on her death, but by so investing it the loss would be fairly and justly apportioned between them, particularly as the latter are at present entitled to no part of, either the principal or the interest on it, and cannot be until her death, according to law.

Such being the case, there is an application to the court, however, to distribute the proceeds of the sheriff's sale of the lands under the recognizance among the several recognizees according to their several and respective interests, without declaring in express or explicit terms, but rather in an argumentative and alternative manner, how it is to be apportioned between them; for, in the first place, it is suggested that although the law favors dower according to the well-known maxim of the common law as announced by Lord Coke, that there are three things which the law favors, life, liberty, and dower, the election of the widow to take the interest on one-third of the proceeds of the sale of all the real estate of the intestate, her deceased husband, in lieu of and as the equivalent of her dower by metes and bounds therein, was her own free and voluntary act, and as such she was bound by it, and she is therefore not entitled to relief against any loss which had resulted from the subsequent depreciation and sale of the lands bound by the recognizance; or, in the next place, if she is to be considered to be entitled to a portion of the sum for which the lands sold under the *scire facias* on the recognizance and is now in this court, she was thereby concluded and estopped from claiming any more than her election gives her, and when she comes under her election into this court for her proportion of it, she can only claim her proportionate part of it, namely, the one-third part of it, or rather the interest on that one-third part of it, there being the sum of one thousand and eleven dollars and eighty-three cents due to her for interest in arrear on the recognizance from the recognizor at the time when this application was presented.

But all this proceeds on the assumption that the sale of the land on the recognizance extinguished it entirely, and at once converted the proceeds of the sale under it into a common fund for immediate and final distribution among all the parties entitled under it in their respective shares and proportions, including the interest of the widow for her life in it, as well as the interests of all the parties secured by it. This, however, was not the operation or effect of the sale on the one-third secured by the recognizance for the benefit of the widow in lieu of her

dower by metes and bounds in the lands, either as to the widow during her lifetime or as to those who may be entitled to receive the principal of it at her death; because that would not only be utterly repugnant to the whole scope and object of the provisions of the statute just referred to, the policy of which is not only to encourage and protect widows in waiving the assignment of their dowers by metes and bounds, and taking in lieu thereof the interest on the one-third of the purchase-money for the land when sold for the term of their lives, and as much for the benefit of the heirs-at-law as for their benefit; but it is expressly provided against and prevented by a later statute which the legislature in its wisdom soon found to be necessary to meet just such a contingency as this, and which accordingly provides, among other things, that where there is any lien by a recognizance with a condition for the payment of interest to one or more persons during their lifetime, and the principal at their death to some other person or persons, in all cases of the sale by virtue of execution process of the real estate bound by such recognizance, such part of the proceeds of said sale as shall be legally applicable to such lien shall be paid into the court out of which the said process issued, and shall be invested by the said court or otherwise disposed of for the benefit of the parties interested as shall be just and proper under the circumstances; and such payment into court shall discharge the officer selling the property from all liability for the money so paid. *Rev. Code Amended, sec.* 2, *page* 682. Since the enactment of that statute there have been payments made into this court in each of the counties of the State under this particular provision of it, and the money in such cases has always been invested by loan for the benefit of the parties interested, that is to say, to pay the interest on it annually to the widow during her lifetime, and the principal at her death to the parties entitled to receive it pursuant to the provisions of the original statute under which the recognizance was taken. And how could it properly be done with due regard to the just and legal rights of all the parties concerned in any other manner, since the widow is legally entitled to receive no part of the principal but only the interest on it during her lifetime, while none of the other parties

in interest are legally entitled to receive any part of either the principal or the interest until after her life has terminated? She alone sustains for the present and during her lifetime any loss by the depreciation of the land and the reduction of the capital sum thus secured for her benefit in lieu of her dower by metes and bounds in it, while they practically sustain no loss whatever by it so long as she lives, but take all that remains of it minus the interest on it in the meantime when she dies; and as neither she nor they are responsible for the loss, it would be just and equitable then to apportion it between them by loaning the amount paid into court by the sheriff, after deducting all the cost to which it is legally subject in this court, the interest upon it to be paid to the widow, Mrs. Russell, annually during her life, and at her death the principal to be paid to the parties then entitled to receive it pursuant to the tenor of the recognizance and the intention and design of the statute under which it was taken, and also of the subsequent act to which we have before referred, as far as it is practicable to carry into effect the meaning and intention of both statutes under the circumstances.

But the cases to which we have before referred of money brought into the Superior Court in the several counties of the State for reinvestment under the particular provisions of *section 2, page 682*, of the *Revised Statutes*, before cited, though similar have varied in one respect from the present case, since in none of those cases, with the exception of one, we believe, did the sale of the land bound by the recognizance on execution process in the hands of the sheriff fail to realize a sufficient sum to satisfy and pay the whole amount of the recognizance, and that was the case of the sale of the lands of George L. Calley, returned to the Superior Court in and for Kent County, at the April term, 1876. In that case Peter L. Cooper, sheriff, presented his petition to the court, stating that by virtue of a writ of *venditioni exponas* to that term at the suit of John S. Jester, administrator of William M. Jester, deceased, against Andrew J. Calley, George L. Calley, and Manlove H. Calley, he sold the lands of the said George L. Calley for the sum of six hundred and fifteen dollars ($615), and that among the liens to which the lands were subject was the lien of a recognizance entered into

by the said George L. Calley together with the said Andrew J. Calley and one John Woodall, in the Orphans' Court of the said county, on the occasion of the sale and assignment of the intestate real estate of one Elisha Maloney, deceased, and which were purchased by and assigned to the said George L. Calley. That the amount of the said recognizance was the sum of seventeen hundred and twenty-five dollars ($1,725), and that the one-third part of said recognizance, being the sum of five hundred and seventy-five dollars ($575), was made payable at the death of Amelia Maloney, widow of the said Elisha Maloney, deceased, to the heirs-at-law of the said Elisha Maloney, deceased, or to the parties entitled thereto at the death of the said Amelia Maloney, the interest thereon in the meantime being payable to her during her life, and that the said recognizance was the first lien against the said George L. Calley on the said lands so as aforesaid sold by him by virtue of the said writ of *venditioni exponas;* and that there remained in his hands as the proceeds of the sale of said lands, after deducting the sum of six dollars and fifteen cents ($6.15), his commission on said proceeds, the sum of six hundred and eight dollars and eighty-five cents ($608.85). That as to the sum of thirty-three dollars and eighty-five cents ($33.85), being the residue of the said sum of six hundred and eight dollars and eighty-five cents ($608.85), after abating therefrom the amount of the said recognizance payable after the death of the said Amelia Maloney, there were conflicting claimants. The petitioner therefore, in conformity with the provisions of the law in that behalf, brings and pays into this court the said sum of six hundred and eight dollars and eighty-five cents ($608.85), and prays that the court will dispose of the same as shall be just and proper under the circumstances.

It further appears by the record of the case that at the April term, 1877, of the court, Minos Connaway presented a petition to the court to borrow the said sum of five hundred and seventy-five dollars ($575) so deposited by the said sheriff and applied to the said recognizance, and which represented the one-third part of said recognizance upon which the said Amelia Maloney, widow of the said Elisha Maloney, was entitled to the interest during her life, the principal thereof being payable at her death to the heirs-

32

at-law of the said Elisha Maloney, or to the parties then entitled to the same, to be secured by his bond with Mary K. York and John W. Fennimore as his sureties, for the sum of five hundred and sixty-nine dollars, after deducting the costs of this proceeding, conditioned for the payment of the interest thereon to the said Amelia Maloney annually during her natural life, and the principal thereof at her death to the heirs-at-law of Elisha Maloney, deceased, or to the parties entitled to the same, or otherwise, as the court may direct. And at the following October term, 1877, of the court the prayer of the petitioner was granted, the proper order for the purpose was made, and the said sum of five hundred and sixty-nine dollars ($569) was so loaned to him by the court on the bond and security and the condition just stated. In that case the recognizance was taken on the 27th day of September, 1859, and the land bound by it was sold on a judgment subsequently recovered in the Superior Court for the county against the recognizor and the other defendants named in the writ of *venditioni exponas*, and the depreciation and loss on the sale of the land under it was not a great deal less than the depreciation and loss which occurred on the sale of the land on the recognizance in the present case, comparatively speaking.

The point has been presented in the argument of the counsel for the other recognizees that if the widow is now entitled to the interest for the term of her life on any part of the fund paid into court in lieu of her dower in the land, it can only be the interest on the one-third of it for the term of her life, and that the remaining two-thirds of it should be distributed and paid forthwith to the other recognizees, but this court has no power or authority to do that, or to reform the recognizance in this or any other respect; besides, as we have before remarked, the latter parties never have been and never can be entitled to receive any part of the principal of the third of this recognizance, amounting to the sum of thirteen hundred and forty-one dollars and sixty-six cents, the one-third of the proceeds of the original sale of the intestate real estate of her deceased husband, which was reserved and secured by it on the lands in the hands of the recognizor for her benefit so long as she lives. On the death of her husband and when she waived the assignment of her dower

by metes and bounds, she was entitled in law to a freehold estate for the term of her life in the one undivided third part of all his lands and tenements as and for her dower therein and as a purchaser thereof for a valuable consideration, and which was paramount to any right or title which the heirs-at-law then had in and to the same; and hence we hold that it is but just and reasonable to conclude in this case that she has a paramount right over the heirs-at-law to the benefit of the whole fund and every part of it which she elected to take in lieu of and in exchange for it as her equivalent share out of the proceeds of the sale of it free of dower, that is to say, the interest on it as long as she lives. As to the distribution of the principal of it on her death, that is not a matter now for the consideration of this or any other court. If some of the heirs-at-law have already been paid by the recognizor their full shares of the two-thirds due to them in her lifetime under the recognizance, and some have been paid nothing, while others have only been paid in part what is already due them, it may on her death present a question for grave consideration how the principal of the other and remaining third is to be distributed between them.

*Comegys, C. J.,* dissented, upon the ground that the election of the widow placed her, with respect to the fund, on the same footing with regard to the depreciation of it as the other parties, her claim not being so *favored* in law as to entitle her under the circumstances to any superior equity; that the fund in court is not the *one-third* of the recognizance or any part of it for the purpose of the decision, but is the balance of the *whole* secured by the sale; that it is, in truth, the unpaid *interest* which the widow as well as those representing the heirs had allowed to accrue, and is not strictly *capital* to be invested at all under the statute; and that the *waiver* of the widow, being an act for her benefit or she would not have made it, placed her upon the same *equality* as the others, which is *equity ;* that the language referred to in the opinion of the court has no application to a widow's status in this country, but had only reference to her freedom by the common law of England from certain duties that pertained to male owners of real estate, specified by Lord

Coke in his first chapter on the law of dower, and not to advantages over the husband's heirs, usually her own children; and that her surrender of her right of freehold and election to have the purchase-money of the whole secured in one recognizance, operated a consent on her part to share with the other parties entitled the risk of shrinkage of the entire fund.

*Cullen,* for Mrs. Russell.

*Robinson,* for Bennett *et al.*